**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

In the Matter of the Arbitration Between                    Civil No. 16-280 (DWF/SER)

Genz-Ryan Plumbing & Heating Co.,

       Employer,

v.                                                                                    **MEMORANDUM**
                                                                                      **OPINION AND ORDER**
Sheet Metal Workers' Local 10, Pension Fund,

       Respondent.

_____

Benjamin D. Sandhal, Esq., Joseph D. Weiner, Esq., and Michael G. Congiu, Esq., Littler Mendelson, PC, counsel for Employer.

Amy L. Court, Esq., Carl S. Wosmek, Esq., and Christy E. Lawrie, Esq., McGrann Shea Carnival Straughn & Lamb, Chtd, counsel for Respondent.

_____

**INTRODUCTION**

This matter came before the Court on March 25, 2016, pursuant to a Motion to Dismiss filed by Genz-Ryan Plumbing & Heating Co." ("Genz-Ryan"). (Doc. No. 10.) For the reasons set forth below, the Court denies the motion.

**BACKGROUND**

Sheet Metal Workers' Local 10, Pension Fund ("Pension Fund") is the respondent in an arbitration brought under the provisions of the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), which amended the Employee Retirement Income Security Act of 1974 ("ERISA").  Genz-Ryan commenced arbitration after the

Pension Fund assessed withdrawal liability against Genz-Ryan. (Doc. No. 3, at 5.) Genz-Ryan raised four issues: (1) the date of Genz-Ryan's withdrawal from the fund (either 2008 or 2009); (2) whether an earlier settlement agreement between Genz-Ryan and the Pension Fund prevented a 2009 withdrawal finding; (3) whether the methods used by the Pension Fund's actuary to calculate the withdrawal liability amount were flawed; and (4) whether the Pension Fund's calculations included benefits that are not nonforfeitable under ERISA. (Doc. No. 4, ¶ 3, Ex. A, at Ex. 1, at Ex. K.) The first issue was dispositive of all others; if Genz-Ryan's withdrawal date occurred during 2008, Genz-Ryan's withdrawal liability would be zero. (*Id.*, ¶ 5, Ex. C., 11:13-11:20.)

On September 15, 2015, the arbitrator heard testimony related to the date of Genz-Ryan's date of withdrawal and determined (with the parties' agreement) that the arbitration would be conducted in two phases—the first phase addressing the date of Genz-Ryan's withdrawal (which would determine liability) and the second phase concerning the calculation of any amount owed by Genz-Ryan if the arbitrator found liability. (*Id.*) After the first phase, the arbitrator ruled in favor of Genz-Ryan and concluded that Genz-Ryan's date of withdrawal was in 2008. (*Id.*, ¶ 6, Ex. D.) Thus, the arbitrator determined that Genz-Ryan faced no liability. As the Pension Fund admits in its response to the present motion, "implicit in [the arbitrator's] award, was that he need not hear further evidence on issues three and four related to damages, because those issues were necessarily rendered moot by his liability finding." (Doc. No. 20, at 4.) While the arbitrator did not make a finding of zero damages in the event that Genz-Ryan

2

was found liable, it is undisputed that the arbitrator concluded that Genz-Ryan faced no liability.

After the arbitration, the Pension Fund initiated this case by filing a Petition to Vacate the arbitration award. (Doc. No. 1.) The Pension Fund, self-styled as the "Respondent," concurrently filed a Memorandum of Law in Support of its Petition to Vacate setting forth its argument for why the arbitration award should be vacated. (Doc. No. 3.) The Pension Fund also filed a Certificate of Service indicating that it served a copy of all of its initial papers via "first class mail, postage paid" to Michael G. Congiu, counsel for Genz-Ryan. (Doc. No. 5.)

In response, Genz-Ryan filed a Motion to Dismiss. (Doc. No. 10.) Genz-Ryan claims that by filing a Petition to Vacate instead of a traditional complaint, the Pension Fund failed to comply with the judicial-review provisions of the MPPAA, thereby warranting dismissal under Federal Rule of Civil Procedure 12(b)(1), (4), and (5). (*Id.*)

## DISCUSSION

### I. The MPPAA

In 1974, Congress enacted ERISA in part for the purpose of ensuring "that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans." *Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 720 (1984). Congress sought to guarantee that "if a worker has been promised a defined

pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it." *Id.* (citation omitted).

To accomplish this goal, ERISA created a plan termination insurance program administered by the Pension Benefit Guaranty Corporation ("PBGC").  29 U.S.C. § 1302. The PBGC collects insurance premiums from covered pension funds and provides benefits to plan participants if their plans terminate with insufficient assets to support the promised benefits.  29 U.S.C. §§ 1322, 1361.  The PBGC's obligation regarding single employer pension plans took effect immediately upon passage of ERISA, while the PBGC's obligations regarding multiemployer pension plans did not become mandatory until January 1, 1978.  29 U.S.C. § 1381.

As the date of mandatory PBGC coverage approached, Congress became concerned that a significant number of plans were experiencing financial hardship, and the assumption of new obligations by the PBGC could lead to the collapse of the plan termination insurance program.  *R.A. Gray*, 467 U.S. at 721.  Congress passed the MPPAA to address this problem.  The MPPAA provides that an employer withdrawing from a multiemployer pension plan pay a fixed and certain debt to the pension plan; this is known as withdrawal liability.  *Id.* at 725.  The withdrawal liability represents the withdrawing employer's share of the unfunded vested liability in proportion to the employer's share of contributions to the plan during the years of its participation. *Concrete Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Trust for S. California*, 508 U.S. 602, 610 (1993).

If an employer objects to the determination of withdrawal liability, and the parties cannot resolve the dispute, the dispute is referred to arbitration. *Id.* at 611; 29 U.S.C. § 1401(a)(1). Any arbitration proceeding under the MPPAA shall "be conducted in the same manner, subject to the same limitations, carried out with the same powers . . . and enforced in United States courts as an arbitration proceeding carried out under [the Federal Arbitration Act.]" 29 U.S.C. § 1401(b)(3). While disputes are referred first to arbitration, there are two ways for disputes under the MPPAA to arrive in federal court. First, if no arbitration is initiated by an employer challenging a determination of withdrawal liability, then a plan sponsor may bring an action in a federal court of competent jurisdiction for collection. 29 U.S.C. § 1401(b)(1). Second, "[u]pon completion of the arbitration proceedings in favor of one of the parties," a party may "bring an action" in "an appropriate United States district court in accordance with section 1451 of this title to enforce, vacate, or modify the arbitrator's award." 29 U.S.C. § 1401(b)(2).

This case involves a request for judicial review of an arbitration award under § 1401(b)(2) and turns on the meaning of the phrases "completion of the arbitration proceedings" and "bring an action" under the MPPAA. *See id*.

## II. Genz-Ryan's Motion to Dismiss

In support of its Motion to Dismiss, Genz-Ryan argues that the Pension Fund's Petition to Vacate is procedurally improper because a Petition to Vacate does not

constitute "an action" as required by the MPPAA. The Pension Fund contends that the arbitration proceedings are incomplete; thus, it was not required to "bring an action."

### A. Completeness of the Arbitration

First, the Court addresses the Pension Fund's argument that the arbitration was incomplete. The Pension Fund argues that the arbitration was not complete because issues remained to be resolved by the arbitrator. Namely, the Pension Fund contends that the arbitrator failed to complete phase two regarding the amount of Genz-Ryan's withdrawal liability. The Court disagrees. The parties agree that the arbitrator decided a dispositive issue in phase one (the date of Genz-Ryan's withdrawal from the fund) which rendered phase two unnecessary. If the arbitrator had decided this phase one issue in the Pension Fund's favor, additional proceedings would likely have been necessary; however, such a counterfactual is not presented here. Further, the Pension Fund cites no law imposing upon the arbitrator the duty to decide issues rendered immaterial by its first decision.

*Board of Trustees of Western Conference of Teamsters Pension Trust Fund v. Loomis Armored Car, Inc.*, 626 F. Supp. 218, 219 (W.D. Wash. 1986), a case relied upon by the Pension Fund, is not to the contrary. There, the court considered when an arbitration was complete under the MPPAA. The court concluded that "an arbitration award [under the MPPAA] is completed for purposes of this section when the arbitration award resolves all issues except for attorneys' fees and costs." *Id.* Here, the arbitration award "resolve[d] all issues" in dispute between the parties because the arbitrator's

finding that Genz-Ryan withdrew in plan year 2008 resulted in a finding of no liability by Genz-Ryan. (Doc. No. 4, ¶ 6, Ex. D.) The Pension Fund admits that "implicit" in the award was that the arbitrator "need not hear further evidence on issues three and four related to damages, because those issues were necessarily rendered moot by [the arbitrator's] liability finding." (Doc. No. 20, 4.) Finally, the Pension Fund conceded that the arbitration proceedings are complete when it filed its Petition to Vacate and specifically invoked 29 U.S.C. § 1401(b)(2), which authorizes for judicial review of arbitrator decisions "[u]pon completion of the arbitration proceedings in favor of one of the parties[.]"

In sum, the Court concludes that the arbitration proceeding was complete for purposes of review of the decision under § 1401(b)(2) of the MPPAA.

### B. Bringing an Action for Judicial Review

Second, the Court addresses Genz-Ryan's contention that the Pension Fund failed to bring an action for judicial review under the MPPAA. Genz-Ryan argues that by using the phrase "bring an action" in § 1401(b)(2), Congress intended that parties seeking review of an arbitration decision issued pursuant to the MPPAA file a complaint in federal court. (Doc. No. 12, 1.) Because the Pension Fund instead filed a Petition to Vacate, Genz-Ryan claims the petition should be dismissed. (*Id.*) The Court disagrees.

#### 1. Meaning of "Bring an Action"

By referencing "action" in § 1401(b)(2), the MPPAA appears to be referencing the familiar process, started by a complaint, outlined in the Federal Rules of Civil Procedure.

The MPPAA does not define "bring an action" in the statute. Black's Law Dictionary defines "action" as "[a] civil or criminal judicial proceeding." *Action*, *Black's Law Dictionary* (10th ed. 2014.) However, the definition mentions no required procedure for commencing an "action." The Rules of Federal Procedure provide additional guidance. Federal Rule of Civil Procedure 2 provides that "[t]here is one form of action—the civil action." The Notes of the Advisory Committee on Rules for Rule 2 indicate that "[r]eference to actions at law or suits in equity in all statutes should now be treated as referring to the civil action prescribed in these rules." Fed. R. Civ. P. 2 advisory committee's note on rules from 1937. Federal Rule of Civil Procedure 3 provides that "[a] civil action is commenced by filing a complaint with the court."

> Section 1401(b)(3) does not compel a different result. It provides that
>
> Any arbitration proceedings under this section shall, to the extent consistent with this subchapter, be conducted in the same manner, subject to the same limitations, carried out with the same powers (including subpoena [sic] power), and enforced in United States courts as an arbitration proceeding carried out under [the Federal Arbitration Act].

At least one court within the Eighth Circuit concluded that the above language requires judicial review of an arbitration award to be commenced via motion because that is how such review would be commenced under the FAA. *Bright Const., Inc. v. Carpenters Dist. Council of Kansas City Pension Fund*, No. 4:12-MC-09028-FJG, 2013 WL 1741984, at *2 (W.D. Mo. Apr. 23, 2013).

The Court, however, finds the Fourth Circuit's analysis in *Freight Drivers & Helpers Local Union No. 557 Pension Fund v. Penske Logistics LLC*, 784 F.3d 210, 212

(4th Cir. 2015), more persuasive. In *Freight Drivers*, the Fourth Circuit concluded that review of an arbitration award under the MPPAA is commenced by filing a complaint. *Id.* at 217. The *Freight Drivers* court heard an appeal from a district court order concluding that a party must bring a motion to challenge an arbitration award under the MPPAA. *Id.* at 214. The Fourth Circuit noted that 29 U.S.C. § 1401(b)(2) provides that "a party to the arbitration proceeding 'may bring *an action* . . . in an appropriate United States district court . . . to enforce, vacate, or modify the arbitrator's award.'" *Id.* (emphasis and alterations in original); 29 U.S.C. § 1401(b)(2). It continued by noting that such an action must be brought in accordance with § 1451 of the MPPAA, which in turn requires that a complaint in any action under § 1401 shall be served upon the Pension Benefit Guarantee Corporation by certified mail. *Freight Drivers*, 784 F.3d at 215; 29 U.S.C. § 1451. Considering § 1401's cross-reference to § 1451, and § 1451's reference to complaints in actions under § 1401, the Fourth Circuit concluded that "[t]he plain meaning of these provisions can only lead to the conclusion that a party seeking review of an MPPAA arbitration award must do so by commencing a civil action in a district court by filing a complaint to vacate or modify the award." *Freight Drivers*, 784 F.3d at 215.

The Court further agrees with the *Freight Drivers* court's analysis regarding the use of the term "action" throughout the statute. Section 1401(b)(1) provides that "[i]f no arbitration proceeding has been initiated . . . , the amounts demanded [for withdrawal liability] shall be due and owing[,]" then a plan sponsor "may bring an action . . . for

9

collection." With no underlying arbitration at issue and no provision incorporating the terms of the Federal Arbitration Act, such an action would be a civil action governed by the Federal Rules of Civil Procedure. Thus, "the exact same language used in § 1402(b)(2) likewise authorizes review of an arbitration award by means of a civil action commenced by the filing of a complaint in court." *Freight Drivers*, 784 F.3d at 215 (citing *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 213 (2001)) (noting the general presumption that "identical words used in different parts of the same act are intended to have the same meaning").

Finally, while it is true that § 1401(b)(3) mentions that arbitration awards under the MPPAA are to be "enforced in United States courts as an arbitration proceeding carried out under [the Federal Arbitration Act,]" it also requires that the procedures of the Federal Arbitration Act will only be used "to the extent consistent with [the other provisions of § 1401.]" Section 1401(b)(2) provides that a party seeking to challenge the arbitrator's ruling must file an "action" to do so. To the extent that the provisions of the Federal Arbitration Act are inconsistent with the MPPAA, the MPPAA's terms must govern. 29 U.S.C. § 1401(b)(3). Thus, the specific terms of § 1401(b)(2) govern.

The Court recognizes that this view is not universal. Two district courts have arrived at a different conclusion. In *Bright Construction*, the Western District of Missouri concluded that § 1401(b)(3) meant that the judicial-review process set forth in the Federal Arbitration Act governed, but did not engage in further analysis about the alternative reading. 2013 WL 1741984, at * 2. For the reasons already discussed, the

Court disagrees with the conclusion reached in *Bright Construction*.  In *Freight Drivers and Helpers Local Union No. 557 Pension Fund v. Penske Logistics LLC*, 2014 WL 547043, at *5-*7 (D. Md. Feb. 7, 2014), *rev'd Freight Drivers*, 784 F.3d at 215, the District of Maryland similarly concluded § 1401(b)(3) requires judicial review of MPPAA-arbitration decisions via motion.  The district court argued that § 1451(g) does not mandate the filing of a complaint but instead merely provides that *if* a complaint is filed then it must be served.  *Id.*, at *6.  While that reading is reasonable, the Court, like the Fourth Circuit, finds the alternative interpretation more persuasive.  Section 1451(g) references service of complaint under § 1451 and § 1401 and provides that the PBGC may intervene "in any such action."  Section 1401 provides for two types of actions: collection actions when no arbitration has been commenced, and actions to "enforce, vacate, or modify the arbitrator's award."  29 U.S.C. § 1401(b).  The Court declines to give the phrase "action" two different meanings.  *See Cleveland Indians*, 532 U.S. at 213 (noting the general presumption that "identical words used in different parts of the same act are intended to have the same meaning").

      The MPPAA provides that a party may seek enforcement or review of an arbitrator's award by bringing an "action" in court.  The Court concludes that such an "action" is a "civil action" as governed by the Federal Rules of Civil Procedure and requires filing a complaint.

### 2. The Pension Fund's Filings

Genz-Ryan moves to dismiss under Federal Rule of Civil Procedure 12(b)(1), (4), and (5). Under Rule 12(b)(1), Genz-Ryan argues that a complaint is required to dispute an arbitrator's award under the MPPAA and, without a complaint, the Court lacks jurisdiction. For its motion under Rule 12(b)(4) (5), Genz-Ryan argues that because a complaint is required and the Federal Rules require process and service of process (neither of which, Genz-Ryan argues, has been accomplished), the case must similarly be dismissed. *See Printed Media Servs., Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993). Thus, Genz-Ryan's arguments can be recast together: if a complaint must be filed, and service of process has not been completed, then this case must be dismissed.

The Court above concludes that a complaint is required under § 1401(b)(2). The record is clear that the Pension Fund did not file a document styled a "complaint" and that no summons has been issued or served. Yet two questions remain: (1) whether the document filed by the Pension Fund can be construed as a complaint; and (2) if so, whether any failure to comply with the service requirements under the Federal Rules of Civil Procedure warrants dismissal.

First, while the initial document filed by the Pension Fund to commence this case was styled as a "Petition to Vacate," the Court concludes that it may be treated as a complaint. Federal Rule of Civil Procedure 8 provides that a claim for relief must contain "a short and plain statement of the grounds for the grounds for the court's jurisdiction[,]" "a short and plain statement of the claim showing that the pleader is

entitled to relief[,]" and "a demand for the relief sought." Rule 8 is to be "liberally construed." *Hanson v. Hunt Oil Co.*, 398 F.2d 578, 581 (8th Cir. 1968). The purpose of the Rule is to give a defendant "fair notice of what plaintiff's claim is and the grounds upon which it rests[.]" *Id.* "[T]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Edelman v. Belco Title & Escrow, LLC*, 754 F.3d 389, 395 (7th Cir. 2014) (quoting *Conley v. Gibson*, 355 U.S. 41, 48, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) *abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544).

Here, the Pension Fund's "Petition to Vacate" satisfies Rule 8. While not styled as a "complaint," that alone is not dispositive. *See* Fed. R. Civ. P. 8(d) ("No technical form is required [for a complaint].") The Petition itself states the grounds for the Court's jurisdiction (29 U.S.C. § 1401(b)(2)), demands relief (vacating the arbitrator's award), and through incorporation of the pleadings attached to the petition, states why the Pension Fund believes it is entitled to the relief it seeks. *See* Fed. R. Civ. P. 8(a). That the document is not titled a "complaint" is a technical error that does not prevent the court from reaching "a proper decision on the merits." *Edelman*, 754 F.3d at 395; *see also In re Tomczak*, Civ. No. 00-12096F, 2000 WL 33728176, at *3 (E.D. Pa. Bankr.

July 19, 2000) (refusing to dismiss a "motion" in a bankruptcy proceeding when it should have been styled a "complaint").[1]

In light of the non-technical and liberal pleadings rules outlined in Rule 8, the Court will construe the "Petition to Vacate" as a complaint sufficient to commence a civil action under Federal Rule of Civil Procedure 3 and the MPPAA.

### 3. Service of Process

While the Court construes the Petition to Vacate as a complaint sufficient to commence a civil action under the Federal Rules of Civil Procedure, that conclusion does not end the inquiry, as Genz-Ryan challenges the sufficiency of the process served to commence the action.

Rule 4 requires that the plaintiff in an action must serve a summons with a copy of the complaint within the time allowed by Rule 4(m). When serving a summons on a corporation, a party can do so either by serving the corporation as one would serve an individual, *see* Fed. R. Civ. P. 4(e)(1), or by delivering a copy of the summons and complaint to an officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process and by mailing a copy to each

---

[1]  Genz-Ryan argues that the Petition to Vacate is not a complaint because the Petition to Vacate is not "short and plain" as required by Federal Rule of Civil Procedure 8. While the Memorandum in Support of the Pension Fund's Petition to Vacate is more verbose than might be expected in a "short and plain statement" required by Rule 8, Genz-Ryan can hardly be surprised that an initial pleading filed by a party seeking review of an arbitration award—which is typically done through a motion—submits a pleading with the detail of that type of motion.

defendant. Fed. R. Civ. P 4(h).  Service may be proven by the submission of an affidavit submitted to the court.

The Rules of Civil Procedure set a time frame for the completion of service of process.  Rule 4(m) provides that service of process must be completed within 90 days after the filing of the complaint.  However, upon a showing of good cause, the Court may extend the time for service of process for an appropriate period.  *Id.*  The Eighth Circuit has permitted extensions of time under Rule 4(m) in cases of "excusable neglect." *Lujano v. Omaha Pub. Power Dist.*, 30 F.3d 1032, 1035 (8th Cir. 1994).  Excusable neglect requires "good faith on the part of the party seeking an enlargement of time and some reasonable basis for noncompliance within the time specified in the rules." *Id.* (alterations omitted).

Genz-Ryan contends that it was not served within 90 days as required by Rule 4(m), and thus dismissal is warranted.  The record in this case contains only a certificate of service indicating that a copy of the Petition to Vacate and its corresponding materials were delivered to Genz-Ryan's attorney.  (Doc. No. 5.)  There is no dispute that a summons has not been served upon Genz-Ryan.  There is also no dispute that while Genz-Ryan's motion to dismiss was filed before the 90-day service-of-process period had run, over 90 days have now passed with no summons requested and no additional evidence of service of process.

The Court, however, finds that good cause is present to justify extending the time by which service must be completed because the Pension Fund reasonably believed that

service had been appropriately accomplished on Genz-Ryan. While only persuasive authority, and not followed by the Court, the only case addressing the proper procedure for seeking review of an arbitrator's decision under the MPPAA within this Circuit is the *Bright Construction* decision. 2013 WL 1741984, at *2. There, the Court held that "a party initiates judicial review of an arbitration award [under the MPPAA] not by filing a complaint in the district, but rather by filing a motion to vacate or modify the award. *Bright Construction*, 2013 WL 1741984, at *2. While the Court disagrees with the *Bright Construction* decision for the reasons stated in this opinion, the interpretation offered in the *Bright Construction* decision is reasonable and the Pension Fund acted reasonably in relying upon it. *See Johnson v. Bd. of Police Comm'rs*, No. 406CV605 CDP, 2007 WL 1629909, at *4 (E.D. Mo. June 4, 2007) (finding excusable neglect in service of process when attorney believed that unserved defendants had been properly served). Here, the Pension Fund accomplished service consistent with the procedure outlined in *Bright Construction*. While the Court disagrees with the procedure outlined in *Bright Construction*, the proper procedure under the MPPAA was unclear. The Court thus finds good cause present to extend the time by which service of process must be complete. The Court will provide two weeks from the date of this order for the Pension Fund to serve process upon Genz-Ryan.

The Court further notes that under Rule 12, Genz-Ryan has 21 days "after being served with the summons and complaint" to file an answer or a motion to dismiss. Fed. R. Civ. P. 12. Service of the summons and complaint upon Genz-Ryan has not

occurred. Thus, should the Pension Fund wish to file an amended complaint or Genz-Ryan wish to file a motion to dismiss on some other grounds not presented here (or renew its motion should service of process not be completed), both parties should have sufficient time to do so. As such, the Court denies Genz-Ryan's motion to dismiss without prejudice.

## CONCLUSION

To seek judicial review of an arbitrators decision under the MPPAA, a party must bring an action in court, commenced by filing a complaint. While the Pension Fund's "Petition to Vacate" was not styled a "complaint," the Court will construe it as a complaint. While the Petition will be treated as a complaint, the complaint has not been served with a summons as required by Rule 4 of the Federal Rules of Civil Procedure. However, given the lack of guidance from courts on the proper procedure for seeking judicial review of an arbitrator's decision under the MPPAA, the Court finds good cause to extend the time frame for service of process under Rule 4(m).

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1. Genz-Ryan's Motion to Dismiss (Doc. No. [10]) is **DENIED**. As it has not yet been served with process, Genz-Ryan may file any responsive pleading, including any motion to dismiss, that it deems is necessary in accordance with the Federal Rules of Civil Procedure.

2. The time for Sheet Metal Workers' Local 10, Pension Fund to serve a summons and a copy of its complaint upon Genz-Ryan and file an affidavit of service regarding the same is extended to two weeks from the date of this order.

Dated:  September 19, 2016         <u>s/Donovan W. Frank</u>
                                   DONOVAN W. FRANK
                                   United States District Judge