UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

James Bigham, Robert Vranicar, Patrick
Welty, John Quarnstrom, Michael
Mitchell, Mike McCauley, Marcus Vitse,
Dave Holzer, and Jim Bowman as
Trustees of the Sheet Metal Workers'
Local 10 Pension Fund, and Sheet Metal
Workers Local 10 Pension Fund,

Civil No. 16-280 (DWF/SER)

**MEMORANDUM
OPINION AND ORDER**

Plaintiffs,

v.

Genz-Ryan Plumbing & Heating Co.,

Defendant.

_____

Benjamin D. Sandhal, Esq., Joseph D. Weiner, Esq., and Michael G. Congiu, Esq., Littler Mendelson, PC, counsel for Employer.

Amy L. Court, Esq., Carl S. Wosmek, Esq., and Christy E. Lawrie, Esq., McGrann Shea Carnival Straughn & Lamb, Chtd, counsel for Respondent.

_____

## INTRODUCTION

After arbitration, Plaintiffs filed suit seeking an order vacating the arbitrator's order. Before the Court are the parties' motions for summary judgment. (Doc. Nos. 38, 43.) For the reasons outlined below, the Court denies Plaintiffs' Motion for Summary Judgment Vacating the January 5, 2016 Arbitration Award and grants Defendant's Motion for Summary Judgment.

# BACKGROUND

## I. Factual Background

Defendant Genz-Ryan Plumbing & Heating Company retained a multi-employer bargaining association ("SMARCA") to negotiate with the Sheet Metal Workers' Local 10 Union (the "Union"). Genz-Ryan, the Union, and SMARCA signed a collective bargaining agreement that was in effect from May 1, 2005 to April 30, 2008. (The "CBA.") As part of the CBA, Genz-Ryan was required to contribute to the Union members' retirement fund. The retirement fund was operated by trustees. Plaintiffs in this case are the fund and trustees. (Generally, the "Fund," and the "Trustees.")

The CBA expired on April 30, 2008, unless it was extended through a reopening process. If the agreement was reopened, then the CBA would remain in effect until "conferences relating thereto ha[d] been terminated by either party." (Doc. No. 41 ("Congiu Decl.") ¶ 1, Ex. 1 at 27.) On December 17, 2007 (five months before the agreement expired), Genz-Ryan gave notice that it was revoking its agreement with SMARCA to negotiate with the Union. Genz-Ryan intended to negotiate its own separate contract with the Union. Despite this, on January 2, 2008, the Union gave notice reopening the CBA. After that, Genz-Ryan reiterated its intent to negotiate a separate contract, but SMARCA and the Union began negotiating a new collective bargaining agreement without Genz-Ryan. SMARCA and the Union reached an agreement on May 2, 2008; Genz-Ryan refused to join it.

After the CBA expired on April 30, 2008, Genz-Ryan notified the Fund that it would no longer be contributing to the retirement fund. Because Genz-Ryan was exiting

the fund, Genz-Ryan faced a withdrawal liability for any unpaid vested benefits. When Genz-Ryan asked in 2008, the Fund told Genz-Ryan that it had no withdrawal liability.

In March 2008, Genz-Ryan began negotiating with the Union for a separate, non-SMARCA agreement. On June 25, 2008, Genz-Ryan declared negotiations were at an impasse. The next day, Genz-Ryan made its final offer. The parties met two more times, but never resolved (or even discussed) the issues that led to the impasse. (Doc. No. 40 at 9.) The last meeting was on October 27, 2008. On October 28, 2008, the Union e-mailed that it would rework the proposal and schedule another meeting. (*See* Congiu Decl. ¶ 16, Ex. 16.) Genz-Ryan never responded to the October 28, 2008 e-mail, nor did the Union ever follow up with a new proposal.

## II. Procedural History

On May 14, 2008, the Union filed an NLRB charge against Genz-Ryan. Based on the charge, the NLRB then filed a complaint against Genz-Ryan alleging that Genz-Ryan had failed to abide by the CBA during the negotiations after April 30, 2008. (Congiu Decl. ¶ 1, Ex. 1 at 3 ¶ 10.) On November 18, 2008—mere weeks after the parties last met—an ALJ held a hearing on the NLRB complaint. In that litigation, Genz-Ryan argued that it was no longer bound by the CBA. The ALJ agreed and found that the CBA terminated after April 30, 2008. The union appealed, and the parties settled.

Additionally, on July 23, 2008, the Fund and the Trustees filed a lawsuit against Genz-Ryan in the District of Minnesota seeking to recoup unpaid contributions for fringe benefits. *Trustees of the Sheet Metal Local No. 10 Control Bd. Trust Fund v. Genz-Ryan Plumbing & Heating Co.*, Civ. No. 08-4752, 2009 WL 2171001 (D. Minn. July 17,

3

2009). Genz-Ryan argued that it had no unpaid contributions because it had paid the fringe benefits through April 30, 2008. The Fund and Trustee argued that the CBA continued after April 30, 2008, because the parties had reopened negotiations. Genz-Ryan argued, however, that the negotiation conferences had ended at the latest on October 27, 2008, which terminated the agreement. Genz-Ryan would have liability only if the agreement remained in effect into 2009. The parties both moved for summary judgment on a few issues, including when the agreement terminated. *Id.* at *3.

Judge Richard H. Kyle denied summary judgment on the issue of when the agreement terminated. In his order, Judge Kyle noted that it seemed that conferences had continued after October 27, 2008, because the parties had not intended for that meeting to be their last. *Id.* at *8. But the court also observed that by the time of the summary-judgment order (July 2009), the parties had never again met, which "seem[ed] to indicate that conferences are now terminated." *Id.* The court, however, could not identify an exact date, which would need to be decided at trial. Specifically, the court found, "[A] genuine issue of material fact remains as to when conferences terminated after April 30, 2008." *Id.*

After the order, the parties settled but expressly reserved the issue of withdrawal liability. (Congiu Decl. ¶ 1, Ex. 1 at 64.) The settlement agreement also provided that the withdrawal liability was not affected by the settlement or the dismissal of either the NLRB case or the federal one. (*Id.* at 68.)

## III. Withdrawal Liability

On March 27, 2012, the Trustees determined that Genz-Ryan withdrew from the CBA in 2009. As a result, Genz-Ryan's withdrawal liability grew from $0 to nearly $900,000. (*Id.* at 72.) On April 16, 2013 (over a year later), the Fund wrote to Genz-Ryan with its determination. The letter did not identify a precise date of withdrawal or when conferences had concluded. (*See id.* at 73.) On May 24, 2013, Genz-Ryan wrote back stating that its withdrawal liability was zero because it withdrew in 2008. (*Id.* at 81.) Genz-Ryan reiterated its position on July 18, 2013. (*Id.* at 83.) On September 10, 2013, the Fund wrote back stating merely that it disagreed with Genz-Ryan on the withdrawal date. (*Id.* at 86.)

On October 29, 2013, Genz-Ryan sought to arbitrate the issue. The arbitrator determined that Genz-Ryan withdrew at the latest on October 27, 2008. Genz-Ryan, therefore, had no withdrawal liability. The Fund and Trustees sought to have this Court vacate or modify the determination. The parties now cross move for summary judgment. (Doc. Nos. 38, 43.)

## DISCUSSION

### I. Legal Standard

#### A. Summary Judgment

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party.

*Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

### B. Standard of Review of Arbitrator's Decisions

Courts review an arbitrator's legal decisions *de novo*, but will defer to the arbitrator's factual determination unless they are rebutted by "a clear preponderance of the evidence." 29 U.S.C. § 1401(c); *see also Union Asphalts & Roadoils, Inc. v. MO-KAN Teamsters Pension Fund*, 857 F.2d 1230, 1233 (8th Cir. 1988). This means that the arbitrator's factual findings will be overturned only if they are clearly erroneous. *Cent. States, Se. & Sw. Areas Pension Fund v. Nitehawk Exp., Inc.*, 223 F.3d 483, 488 (7th Cir. 2000). This same standard applies to mixed questions of fact and law. *Id.*

Plaintiffs claim that the arbitrator erred in two ways. First, the arbitrator failed to find that Judge Kyle's order was preclusive on the issue that conferences continued after October 27, 2008. Second, the arbitrator erred by finding that conferences terminated at the latest on October 27, 2008.

## II.  Collateral Estoppel of Judge Kyle's Order

Plaintiffs argue that the arbitrator erred by failing to give preclusive effect to Judge Kyle's conclusion that conferences continued past October 27, 2008. Collateral estoppel precludes a party from re-litigating finally adjudicated issues. Under Minnesota law, collateral estoppel applies when:

> (1) [T]he issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*State v. Lemmer*, 736 N.W.2d 650, 659 (Minn. 2007). Here, Judge Kyle did not make a final determination that negotiations continued beyond October 27, 2008. Indeed, the court explicitly stated that a genuine issue of material fact remained regarding when conferences concluded after April 30, 2008. *Genz-Ryan Plumbing & Heating Co.*, 2009 WL 2171001, at *8. Thus, Judge Kyle's order is not entitled to preclusive effect on the issue of when conferences terminated. Plaintiffs have therefore failed to show the arbitrator erred by not applying collateral estoppel to Judge Kyle's order.

## III.  October 27, 2008 Withdrawal Date

Plaintiffs also argue that even if collateral estoppel does not apply, the arbitrator nonetheless erred by finding that conferences terminated by October 27, 2008. The

7

arbitrator found that the terms of the CBA continued after April 30, 2008, until conferences terminated. But the arbitrator also concluded that terminating conferences did not require "any magic words." (Doc. No. 46, Ex. 4 at 61.) Instead, the parties could just stop conferring. The arbitrator found that Genz-Ryan properly declared an impasse of negotiations in June 2005, and then met with the Union twice after the impasse. The arbitrator concluded that the two meetings did not break the impasse because the parties did not resolve the known deal-breaker issues. (*Id.* at 62.) Thus, the arbitrator found that conferences terminated no later than October 27, 2008, based on: (1) Genz-Ryan declaring an impasse on June 25, 2008; (2) the last meeting occurring on October 27; and (3) that after October 27, "at no time did either party actively communicate with the other about negotiating a contract that differed from the Employer's self-imposed one." (*Id.* at 62-63.)

The arbitrator rejected Plaintiffs' contention that conferences continued after October 27, 2008. In the arbitration, Plaintiffs submitted three bases for concluding that conferences terminated in July 2009. Plaintiffs relied on: (1) the fact that Judge Kyle's order denying summary judgment was issued in July 2009; (2) the Union's October 28, 2008 e-mail stating that the Union hoped to continue negotiations, and the belief of Genz-Ryan's co-owner Jon Ryan that Genz-Ryan was obligated to negotiate into 2009; and (3) the fact that payments from settling the fringe-benefit and NLRB cases were credited until July 2009. (*Id.* at 45-46.)

The arbitrator found the Plaintiffs' bases meritless. The arbitrator noted that even the Fund's own minutes show that the Trustees were "dubious about the conclusion . . .."

8

(*Id.* at 59.) First, the arbitrator rejected the notion that Judge Kyle's order denying summary judgment could be used to support the Fund's determination of when conferences terminated. (*Id.* at 59.) Second, the arbitrator rejected that the e-mail extended the CBA because the parties had failed to overcome the deal-breaker issues that led to the impasse. Similarly, the Union never followed through on its offer in the e-mail to rework the proposal. Last, the arbitrator concluded that the accounting of settlement payments could not support a July 2009 withdrawal date in part because the settlement agreement provided that it would not affect withdrawal liability.[1] (*Id.* at 57.)

On review, Plaintiffs principally argue that the arbitrator made three errors: (1) the arbitrator failed to give the proper deference to the Fund's determination that Genz-Ryan withdrew in July 2009; (2) even if the arbitrator deferred to the Fund, the arbitrator erred by finding that Genz-Ryan overcame that deference; and (3) the evidence does not support a finding that conferences terminated on October 27, 2008.

First, Plaintiffs argue that the arbitrator did not give the proper deference to the Fund's factual determination. Under 29 U.S.C. § 1401(a)(3)(A), a fund's factual

---

[1] Plaintiffs argue that the arbitrator erred when it considered Genz-Ryan's argument that the settlement payments could not provide a credible basis for the July 2009 withdrawal date because Genz-Ryan waived any argument about the settlement agreement. Genz-Ryan had argued to the arbitrator that the settlement agreement "prevented" a 2009 withdrawal date, but then abandoned this argument. (Doc. No. 45 at 10.) Then, when Plaintiffs argued that the settlement agreement supported a 2009 withdrawal date, Genz-Ryan argued that the settlement agreement by its terms could not affect the withdrawal date. Plaintiffs argue that the arbitrator erred by considering Genz-Ryan's argument. Genz-Ryan, however, did not waive this argument when it abandoned the argument that the settlement agreement precluded a 2009 withdrawal date. The arguments are distinct. Thus, Plaintiffs' waiver argument fails.

9

determinations are "presumed correct unless the party contesting the determination shows by a preponderance of the evidence that the determination was unreasonable or clearly erroneous." The Supreme Court has interpreted this provision to mean that "the burden [is] on the employer to disprove a challenged factual determination by a preponderance." *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 629 (1993). All this standard asks of the employer is to show "that a finding of fact was more probably wrong than not." *See id.* at 625.

Here, the arbitrator correctly stated the legal standard. (Doc. No. 46, Ex. 4 at 56.) But the withdrawal date is not a purely factual issue. Instead, the withdrawal date presents a mixed question of fact and law. *Concrete Pipe & Prod. of Cal., Inc.*, 508 U.S. at 630. The arbitrator correctly identified the issue as a mixed question and explained that determining the withdrawal date required him to determine when the parties reached an impasse in negotiations and when conferences ended. (Doc. No. 46, Ex. 4 at 56.) According to the arbitrator, these issues were not entitled to deference because they were "predicted on legal and credibility determinants." (*Id.*) On review, the Court concludes that the arbitrator applied the correct amount of deference to Plaintiffs' factual determinations. The arbitrator identified the correct standard of review and correctly noted that the withdrawal date was a mixed question of fact and law, which is not entitled to the statutory presumption. Thus, Plaintiffs have failed to show that the arbitrator erred by applying the wrong legal standard.

Next, Plaintiffs argue that the arbitrator erred by concluding that Genz-Ryan overcame the statutory deference. In rejecting the Fund's purported bases, the arbitrator

10

had to make a number of factual and credibility determinations. A court will not overturn those determinations without a showing of clear error. Here, Plaintiffs have failed to show that the arbitrator committed clear error.

Last, Plaintiffs argue that the arbitrator erred by finding that conferences terminated on October 27, 2008. The arbitrator's determination of a withdrawal date is a mixed question of fact and law, which courts will uphold unless the arbitrator committed clear error. *Nitehawk Exp., Inc.*, 223 F.3d 483, 488. Here, Plaintiffs have failed to show that the arbitrator committed clear error.[2]

## ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Summary Judgment Vacating the January 5, 2016 Arbitration Award (Doc. No. [43]) is **DENIED**.

2. Genz-Ryan's Motion for Summary Judgment (Doc. No. [38]) is **GRANTED**. Plaintiffs' Amended Complaint (Doc. No. [26]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 30, 2017
s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge

---

[2] Plaintiffs also moved for summary judgment to strike Defendant's affirmative defenses. (Doc. No. 45 at 34-35.) Because the Court resolves the case at summary judgment, the Court does not need to address this issue.